**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

LOIS R. MEELER                                                              PLAINTIFF

v.                                NO. 4:06CV00031 JLH

MICHAEL J. ASTRUE, Commissioner,
SOCIAL SECURITY ADMINISTRATION[1]                          DEFENDANT

## **OPINION**

Lois R. Meeler has appealed the final decision of the Commissioner of the Social Security Administration to deny her claim for Disabled Adult Child's benefits and Supplemental Security Income, based on disability. Both parties have submitted appeal briefs and the case is ready for decision.

The Court reviews to determine, first, whether the Commissioner's decision is supported by substantial evidence on the record as a whole and, second, whether the decision is free from legal error. *See Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also*, 42 U.S.C. § 405(g) (2000). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting *Consol. Edison Co. of NY v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996) (quoting *Smith v. Shalala*, 31 F.3d 715, 717 (8th Cir. 1994)). In assessing whether substantial evidence supports the Commissioner's decision, the Court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it; the Court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported an opposite

---

[1] Michael J. Astrue was sworn in as the Commissioner of Social Security on February 12, 2007. He is therefore substituted for Jo Anne B. Barnhart pursuant to Fed. R. Civ. P. 25(d)(1).

decision. *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993). After consideration of the record as a whole, the Court finds that the decision of the Commissioner is supported by substantial evidence.

To qualify for benefits as a Disabled Adult Child, Meeler must demonstrate that she was under a disability before reaching her twenty-second birthday, the last date that she had insured status for the purpose of obtaining child's disability benefits on the earnings account of her father that she had depended on since his death. 42 U.S.C. § 402(d)(1) (2000); *Dunlap v. Harris*, 649 F.2d 637, 638 (8th Cir. 1981). "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2000). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Meeler initially alleged disability based on iliotibial[2] tendinitis of the left hip, juvenile rheumatoid arthritis and a learning disability. (Tr. 91.) At the administrative hearing, she testified that she was unable to work because of depression in addition to bursitis and tendinitis in her hip. (Tr. 325.) The Administrative Law Judge[3] (ALJ) concluded that Meeler had not been under a disability within the meaning of the Social Security Act at any time through December 29, 2004, the date of his decision. (Tr. 25.) On November 14, 2005, the Appeals Council denied Meeler's request

---

[2] Relating to the ilium, the broad, flaring portion of the hip bone, and the tibia. PDR MEDICAL DICTIONARY 875 (2d ed. 2000).

[3] The Hon. Jimmy D. Puett.

for a review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (Tr. 4-6.) Meeler then filed her complaint initiating this appeal. (Docket #2.)

In considering Meeler's case, the ALJ followed the required five-step sequential evaluation process. The first step is to determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i) (2004). If the claimant is engaged in substantial gainful activity, benefits are denied, regardless of medical condition, age, education or work experience. *Id.* at § 404.1520(b). The second step is to determine whether the claimant has an impairment or combination of impairments that is "severe" and meets the duration requirement. *Id.* at § 404.1520(a)(4)(ii). If not, benefits are denied. *Id.* A "severe" impairment significantly limits a claimant's ability to perform basic work activities. *Id.* at § 404.1520(c). The third step is to determine whether the severe impairment or combination of impairments meets or equals a listed impairment. *Id.* at § 404.1520(a)(4)(iii). If so, and if the duration requirement is met, benefits are awarded. *Id.* If the claimant does not meet or equal a Listing, then a residual functional capacity assessment is made and is used in the fourth and fifth steps. *Id.* at § 404.1520(a)(4)(iv-v). The fourth step is to determine whether the claimant has sufficient residual functional capacity to perform past relevant work. *Id.* at § 404.1520(a)(4)(iv). If so, benefits are denied. *Id.* The fifth step is to determine whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience. *Id.* at § 404.1520(a)(4)(v). If so, benefits are denied; if not, benefits are awarded. *Id.*

Meeler was 21 years old at the time of the hearing. (Tr. 321.) She had completed the eleventh grade in school, mostly in special education classes, and then completed high school in home-schooling. (Tr. 321-22.) She had no past relevant work. (Tr. 22, 24.) The ALJ found that

Meeler met the non-disability requirements for Childhood Disability benefits. (Tr. 24.) He found that she had not engaged in substantial gainful activity since her alleged onset date. *Id.* He found that Meeler had a severe impairment, but that she did not have an impairment or combination of impairments that met or equaled a Listing. (Tr. 18, 24.) He judged that Meeler's subjective allegations were not totally credible. (Tr. 24.)

The ALJ determined Meeler's residual functional capacity, finding that she had the physical ability to perform up to medium work, except that she could not stand, walk or both more than two hours in an eight-hour workday; she could sit no more than six hours in an eight-hour workday; she could only occasionally stoop, kneel, crouch, crawl or climb; she could not do any climbing that required frequent balancing, such as climbing ladders or scaffolds. (Tr. 22.) She should avoid walking on uneven surfaces, temperature extremes and jolting movements of the left hip. *Id.* The limitation on standing and walking effectively limited Meeler to sedentary work. *See* Social Security Ruling 83-10 (1983); *Frankl v. Shalala*, 47 F.3d 935, 937 (8th Cir. 1995) (stating that any level of work above sedentary requires an ability to stand or walk for a total of six hours of an eight-hour work day); *Carter v. Sullivan*, 909 F.2d 1201, 1202 (8th Cir. 1990) (same).

In April of 2004, Meeler was evaluated by Sam Boyd, Ph.D., on referral from Disability Determination for Social Security Administration. (Tr. 284-91.) In addition to his narrative report, Dr. Boyd completed a Medical Assessment of Ability to do Work-related Activities (Mental). (Tr. 292-93.) According to Dr. Boyd, Meeler had a good[4] ability to follow work rules; relate to co-workers; interact with supervisors; deal with work stress; maintain attention and comprehension;

---

[4] As defined on the form, "good" means that the "Ability to function in this area is limited but satisfactory." (Tr. 292.)

understand, remember and carry out simple job instructions; maintain personal appearance; behave in an emotionally stable manner; relate predictably in social situations; and demonstrate reliability. *Id.* He said that she had a fair[5] ability to deal with the public; use judgment; function independently; and understand, remember and carry out detailed, but not complex, job instructions. *Id.* He said that her ability to understand, remember and carry out complex job instructions was poor or none.[6] (Tr. 293.) He also said that she was capable of managing benefits in her own best interest. *Id.* The ALJ relied on Dr. Boyd's assessment of Meeler's mental ability to do work-related activities as a portion of his residual functional capacity determination (Tr. 22) and in his hypothetical question to a vocational expert witness at the hearing (Tr. 338-40). He also included in his hypothetical question that the claimant had an ability to read at about the second grade level. (Tr. 340) The vocational expert testified that a person with these abilities and restrictions could perform jobs such as sedentary production work and escort vehicle driving. (Tr. 341.)

The ALJ found that Meeler had no past relevant work. (Tr. 22, 24.) He correctly noted that, once Meeler was determined to have no past relevant work, the burden shifted to the Commissioner to show a significant number of jobs within the economy that she could perform, given her residual functional capacity, age, education and past work. (Tr. 22.) Based on the testimony of the vocational expert in response to a series of hypothetical questions, the ALJ found that Meeler could perform a significant number of jobs in the economy, notwithstanding her limitations, including jobs

---

[5] As defined on the form, "fair" means that the "Ability to function in this area is seriously limited, but not precluded." *Id.*

[6] As defined on the form, "poor or none" means "No useful ability to function in this area." *Id.*

as a sedentary, unskilled production sampler and as a sedentary, unskilled escort vehicle driver. (Tr. 23.) Consequently, the ALJ concluded that Meeler was not disabled. (Tr. 24.)

On appeal, Meeler contends that the ALJ erred in relying on the vocational testimony because that testimony was not supported by substantial evidence. (Br. 11-19.) She argues the testimony of the vocational expert conflicted with the *Dictionary of Occupational Titles* (DOT) and the requirements for those jobs as reflected in the DOT. (Br. 11-18.) The DOT, in its job definition, represents approximate maximum requirements for each position, rather than the range. *Fenton v. Apfel*, 149 F.3d 907, 911 (8th Cir. 1998); *Jones v. Chater*, 72 F.3d 81, 82 (8th Cir. 1995). The Eighth Circuit has explained:

> The VE listed 218 order clerk jobs and 122 information clerk jobs in Arkansas that he believed Hall could perform. Hall cites the U.S. Department of Labor's *Dictionary of Occupational Titles* (DOT) and a supplement thereto, for the proposition that these jobs all require reaching, handling, or finger work. Hall's reliance on the DOT as a definitive authority on job requirements is misplaced, however, for DOT definitions are simply generic job descriptions that offer "the approximate maximum requirements for each position, rather than their range." The DOT itself cautions that its descriptions "'may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities.'" In other words, not all the jobs in every category have requirements identical to or as rigorous as those listed in the DOT. We are satisfied that Hall could perform a number of jobs within the categories the VE listed, despite her impairments.

*Hall v. Chater*, 109 F.3d 1255, 1259 (8th Cir. 1997) (footnotes and citations omitted); *accord*, *Wheeler v. Apfel*, 224 F.3d 891, 897 (8th Cir. 2000). Generally, when vocational expert testimony conflicts with the DOT, the DOT controls. *Montgomery v. Chater*, 69 F.3d 273, 276 (8th Cir. 1995); *Smith v. Shalala*, 46 F.3d 45, 47 (8th Cir. 1995). DOT classifications may be rebutted, however, when vocational testimony properly supports that deviation. *Montgomery*, 69 F.3d at 276 (citing *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995)).

Assuming, for the sake of argument, that the vocational expert's testimony deviated from the DOT, the testimony was properly supported. That testimony, with cross-examination, was extensive and thoughtful. (Tr. 336-37, 338-50.) As mentioned above, the vocational expert identified two categories of work that Meeler could do – production work jobs and escort vehicle driver jobs. (Tr. 341.) Meeler contends that these two types of work required more reading ability than she had. (Br. 15.) The vocational expert testified:

> And I want you to know that I will give you examples of jobs that will assume an average or lower general educational development. These would be the low end of unskilled work. . . . What I'm telling you is that the jobs I'll give you examples of will require below average reasoning, math and language ability.

(Tr. 340-41.)

> [T]he vehicle driver, this is not like a truck driver. That person, of course, is going to have to pass a drivers' test which would assume that that person has the ability to read signs, road signs.[7] But I'm not going to eliminate that job for that reason, and, of course, the production worker jobs do not require more than a 2nd grade reading ability or word recognition ability.

(Tr. 342.) The vocational expert adequately explained his conclusions. In addition, he was subject to extensive cross-examination. (Tr. 343-50.) If there were questions about the vocational expert's testimony, the proper time to raise those questions was during cross-examination. The Fifth Circuit has explained:

> [A]ll kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation. Moreover, claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.

---

[7] Meeler testified that she had a driver's license, but did not drive very much. (Tr. 335-36.)

*Carey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000).

In addition, Meeler contends that the ALJ did not include all of her limitations in his hypothetical questions. (Br. 18-19.) Again, the proper time to raise such concerns was during cross-examination. In fact, the subject was discussed, as follows:

> ATTY: My problem is this, Judge. I have a myriad of limitations that this person has.
>
> ALJ: Well, then put them all in a hypothetical and ask him.
>
> ATTY: I think we have them in a hypothetical.

(Tr. 346.) The hypothetical questions stated with reasonable precision Meeler's impairments. *See Starr v. Sullivan*, 981 F.2d 1006, 1008 (8th Cir. 1992) ("A vocational expert's response to a hypothetical question provides substantial evidence where the hypothetical question sets forth with reasonable precision the Claimant's impairments.").

Finally, Meeler contends that the ALJ's credibility determination is not supported by substantial evidence. (Br. 19-20.) The ALJ considered Meeler's subjective complaints in light of the factors of *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984).[8] (Tr. 19-21.) In *Polaski*, the court said:

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. the claimant's daily activities;

---

[8] He also cited Social Security Ruling 96-7p. (Tr. 19.) That ruling tracks *Polaski* and 20 C.F.R. § 416.929(c)(3) and elaborates on them.

>    2. the duration, frequency and intensity of the pain;
>
>    3. precipitating and aggravating factors;
>
>    4. dosage, effectiveness and side effects of medication;
>
>    5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints *solely* on the basis of personal observations.  Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

*Polaski*, 739 F.2d at 1322.

The record contains little objective support for Meeler's claim of disability.  No evaluations showed medical conditions that were disabling.  Meeler testified that she had hip pain all the time, especially when going down steps or bending, but she was not receiving treatment for her hip at the time of the hearing, and had not for one year.  (Tr. 325-27.)  She had a treating physician but had only seen him once or twice, for a cold and a flu shot.  (Tr. 328-29.)  In January of 2002, Meeler saw an orthopedic doctor for her hip.  The orthopedic doctor noted that Meeler reported less pain lately after starting ballet three to four weeks before.  He thought the ballet would help and asked Meeler to return in six weeks.  She did not return, despite attempts to contact her by phone.  (Tr. 237-38.)

Meeler engaged in extensive daily activities, which is inconsistent with the level of pain and limitation alleged.  In April of 2004, Meeler reported that she had cleaned buildings in the past and could still do that job well.  (Tr. 286.)  She reported that she spent her days visiting her aunt's daycare and playing with the children there, watching television, playing with her dog, going for walks and doing bead work.  (Tr. 287.)  She reported that she groomed without assistance, helped with household chores, prepared simple meals, drove, shopped, handled her own finances, including managing a checking account and paying bills, and that she had lived briefly on her own.  (Tr. 290.)

In a visit to Counseling Associates during the month before the hearing, she reported that she enjoyed bowling and church and had enjoyed roller blading in the past. She enjoyed poetry. (Tr. 299.) In her application for Social Security benefits dated April 2, 2002, she stated that she had lived on her own since she was 16. She was 18 years and 11 months old when she made that statement, so she had lived on her own for some two to three years. She received Social Security benefits after her father's death and mostly handled those benefits on her own. (Tr. 89, 98.)

Because of the lack of medical evidence to support of Meeler's allegations, the limited treatment, the absence of medications, the extent of Meeler's daily activities, her limited work record, her functional capabilities, and the lack of restriction placed on Meeler by any physician, the ALJ could rightly discount Meeler's subjective complaints. *See, e.g.*, *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) ("The ALJ may discount complaints of pain if they are inconsistent with the evidence as a whole."); *Dodson v. Chater*, 101 F.3d 533, 534 (8th Cir. 1996) ("[A]fter full consideration of all of the evidence relating to subjective complaints, [the ALJ] may discount those complaints if there are inconsistencies in the evidence as a whole."); *see also Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006) (noting that plaintiff performed household chores, mowed the lawn, raked leaves, shopped for groceries and drove a car); *Forte v. Barnhart*, 377 F.3d 892, 896 (8th Cir. 2004) (stating that plaintiff attended college classes and church, shopped for groceries, ran errands, cooked, drove, walked for exercise and visited friends and relatives); *Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir. 2001) ("The [plaintiff] took care of personal needs, washed dishes, changed sheets, vacuumed, washed cars, shopped, cooked, paid bills, drove, attended church, watched television, listened to the radio, visited friends and relatives, and read."); *Gray v. Apfel*, 192 F.3d 799, 804 (8th Cir. 1999) (finding that plaintiff cared for himself, did household chores, drove short

distances, and performed other miscellaneous activities); *Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir. 1999) (recalling plaintiff's testimony stating that he had cooked some meals, watered flowers around house, helped his wife paint, watched television, went out for dinner, occasionally drove, and occasionally visited with friends); *Lawrence v. Chater*, 107 F.3d 674, 676 (8th Cir. 1997) (commenting that the plaintiff dressed and bathed herself, did some housework, cooking, and shopping); *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (remarking that the claimant cared for one child on a daily basis, drove when unable to find ride, and sometimes went to the grocery store); *Nguyen v. Chater*, 75 F.3d 429, 430 (8th Cir. 1996) (stating that the plaintiff was capable of visiting neighbors, cooking her own meals, doing her own laundry, and attending church); *Novotny v. Chater*, 72 F.3d 669, 671 (8th Cir. 1995) (concluding that carrying out the garbage, carrying grocery bags, and driving his wife to and from work were inconsistent with his allegations of extreme, disabling pain); *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995) (noting that plaintiff cooked breakfast, "sometimes" needed help with household cleaning and other chores, visited friends and relatives, and attended church twice a month); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) (acknowledging that the plaintiff lived alone, drove, shopped for groceries, and did housework with some help from a neighbor).

The ALJ's credibility analysis was proper. He made express credibility findings and stated his reasons for discrediting Meeler's subjective complaints. *E.g.*, *Shelton v. Chater*, 87 F.3d 992, 995 (8th Cir. 1996); *Reynolds v. Chater*, 82 F.3d 254, 258 (8th Cir. 1996); *Hall v. Chater*, 62 F.3d 220, 224 (8th Cir. 1995).

This Court may not review the evidence *de novo*, nor may this Court reverse the decision of the ALJ because some evidence in the record contradicts his findings. The issue before this Court

11

is whether substantial evidence in the record as a whole supports the decision of the ALJ. *E.g.*, *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996); *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992). Substantial evidence supports the ALJ's decision; that is, ample evidence exists in the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson*, 402 U.S. at 401, 91 S. Ct. at 1427; *see also Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004). The Commissioner's decision is not based on legal error.

## CONCLUSION

The Court affirms the final determination of the Commissioner. Meeler does have some impairments, but she is not disabled within the meaning of the Social Security Act. Meeler's complaint is dismissed with prejudice. A judgment in favor of the Commissioner will be entered separately.

DATED this 22nd day of May, 2007.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE